THADDEUS W. MARKLEY

*v.*

CAMDEN SAFE DEPOSIT AND TRUST COMPANY, trustee, et al.

[Decided April 6th, 1908.]

1. On the death of complainant's father intestate, leaving a widow and six children, all but one of whom were minors, his estate was partitioned in proceedings practically under the management and control of the widow, who was appointed general guardian of the minors, and the elder brother, the clerk of the court being made guardian *ad litem* for the minor heirs, and on the partition real property worth $25,000 was sold to the widow for $3,000, there being testimony that she purchased the property for the benefit of the children. Complainant at the time of the sale was only sixteen years old, and it appeared did not fully understand the nature of the transaction.—*Held,* that the sale to the widow was a constructive fraud upon the minor children; and she took title to the property and the proceeds thereof upon its subsequent sale for their benefit.

2. The statute of limitations runs against the right to assert a constructive trust.

3. Where complainant's mother, upon the death of his father intestate, purchased the homestead at a partition sale at a grossly inadequate price, she having entire control of the partition proceedings, so that her purchase of the property under the circumstances amounted to a constructive fraud, and complainant was at the time sixteen years old, and had no intelligent understanding of the transaction, and after he reached his majority acquiesced in the transaction under the understanding that the property was to go to the heirs on the mother's death, the statute of limitations did not run against his right to have the partition sale set aside so as to secure his interest in the property.

4. The release of a guardian can only operate to discharge claims to funds received by her as guardian.

5. Where complainant's mother purchased the homestead at a partition sale upon her husband's death for a grossly inadequate price, complainant being a minor at the time and not understanding the transaction, so that she took the property under a constructive trust for the minor heirs, the burden is on her to show that, by her release as general guardian for the minor heirs, she was thereby discharged to account for the proceeds of the property purchased at the partition sale.

6. Complainant's father left real estate which was subsequently partitioned between the surviving widow and children at the instance of the widow, and the homestead was sold in the partition proceedings and pur-

chased by her at a grossly inadequate price, so as to entitle the children to have the sale set aside as a fraud upon them. Thereafter she conveyed the proceeds of said property in trust to defendant, to pay the income to herself for life, and, after her death, the income of complainant's share to be paid to him, and at his death his share to go to his children. After his mother's death, complainant accepted payments of income under the trust deed, and rented a part of the trust property from defendant. he then being ignorant of his right to have the sale to his mother on partition set aside and of the facts giving him such right.— *Held,* that complainant's apparent acquiescence in the disposal of the proceeds of the property unlawfully sold being due to his ignorance, he was entitled to have the terms of the trust deed so modified as to give him the immediate enjoyment of his share.

On final hearing on bill, answer, replication and proofs.

*Messrs. Gaskill & Gaskill,* for the complainant.

*Mr. George J. Bergen* and *Mr. Herbert A. Drake,* for the defendants.

LEAMING, V. C.

Complainant seeks relief against a certain trust deed made by his mother, Mary Josephine Markley, in her lifetime, to defendant trust company. The ground asserted for relief is that the property which was conveyed by Mrs. Markley to the trust company by the trust deed in question was not the absolute property of Mrs. Markley, but that her rights in the property were, in equity, limited to its enjoyment during her lifetime, and that at her death her issue (except Hamilton Markley, who is conceded to have released for the benefit of the other heirs any claim he may have had) became entitled to the property in equal shares of one-fifth each. The property in question represents the proceeds of sale of the real estate of which Albert W. Markley (husband of Mary Josephine Markley and father of complainant) died seized. The constructive trust which complainant now asserts is claimed to have arisen by reason of the manner in which Mrs. Markley acquired title to the property. Her husband died intestate in September, 1875, owning a large amount of personal property and seized of two tracts of real estate, one known as the mansion-house or 420 Cooper street,

Camden, where he resided, and the other as the Shamong tract, in Burlington county, and leaving him surviving his widow, Mary Josephine Markley, and six children, one of them complainant, as his heirs-at-law. At the time of the father's death all of the children were minors except Hamilton, and after the father's death all continued to reside with their mother in the mansion-house referred to. In the following December Hamilton filed a bill for partition of the real estate, and pursuant to decree of court, sale was made by a special master in June, 1876. At the partition sale the mansion-house property was sold by the master to Mrs. Markley for $3,000. It is admitted that the property was then worth $25,000. The Shamong property was sold to a disinterested purchaser for $700, its full value. In the partition proceedings the clerk of the court was made guardian *ad litem* for the several minor heirs, and after confirmation of the sales Mrs. Markley was appointed by the orphans court as guardian of the minors and as such was authorized to receipt for the proceeds of the sales, she having, prior thereto, released her dower rights in the real estate.

I am entirely satisfied from the evidence disclosing the circumstances surrounding the transaction that this purchase of the mansion-house property by Mrs. Markley was not such a purchase as can be said to have divested the equitable estate of the minor children. Complainant was then sixteen years of age. He and the other minor children were under their mother's care and protection. Her will was their will at that time. While in the partition proceedings the clerk of the court had been duly appointed guardian *at litem* of the minors, there can be little doubt that the entire proceedings taken were essentially under the management and control of Mrs. Markley and her son Hamilton. No court could have confirmed that sale of the homestead property with the knowledge of its real value. Mrs. Markley, while acting or while about to act as general guardian of the minors, became the recipient of the title theretofore vested in the minors and at a valuation unconscionably inadequate. As general guardian of the minors she was able to receipt for the amount of her bid. It does not appear that the amount of her bid ever found its way into her ac-

counts as guardian or that the amount for which the Sha-
mong property was sold ever became a part of her guardian-
ship accounts. Mrs. Markley's purpose at the time may have
been and probably was that the transaction should eventually
result in benefit to the children. Statements made by her were
to the effect that she took title to the homestead for the benefit
of the children, but such a purpose will not destroy the construc-
tive fraud which the policy of the law requires a court to assume
to be present in such a transaction. I am convinced that it is
the clear duty of a court of equity to declare a constructive trust
in favor of the minors in the transaction referred to, and to
treat Mrs. Markley as a trustee holding the title to the home-
stead property for the benefit of her children and holding the
proceeds of sale of the Shamong tract for their benefit, unless
it satisfactorily appear that as guardian or otherwise she sub-
sequently accounted to them for the full value of the homestead
property and for the proceeds of sale of the Shamong tract or
that they have since in some other manner lost their right to
assert their claim.

Complainant reached his majority in the year 1881, and as
the statute of limitations runs against the right to assert a con-
structive trust, complainant's remedy is now lost unless his delay
is sufficiently excused. The reason assigned for the long delay
on the part of the complainant in asserting his rights is that a
family arrangement existed whereby it was understood that the
real estate and its proceeds should be enjoyed by Mrs. Markley
as long as she lives and that the *corpus* would not be diverted by
her from the course of legal descent. If the failure of defend-
ant to earlier assert his rights has been by reason of a family
arrangement of the nature referred to, reasonably attributable to
Mrs. Markley, it is clear that he should not be barred, for such
an arrangement contemplates the postponement of the enjoy-
ment of the rights of the heirs for the benefit of their mother un-
til her death. I find it somewhat difficult to determine with
certainty to what extent complainant may have deferred the as-
sertion of his rights through any such understanding, reason-
ably attributable to his mother. That a family arrangement
existed touching the real estate is entirely certain. In the deed

of trust against which complainant now seeks relief Mrs. Markley, by way of recitation, over her own signature, asserts that the partition proceedings "were inaugurated and completed in conformity to and in compliance with a family arrangement for that purpose." Complainant testifies to conversations with his mother in which she stated to him that at her death the real estate was to go to the children equally. Mrs. Schellenger's testimony, though somewhat vague, is to the same general effect. It may be that the evidence justifies the conclusion that complainant's failure to earlier assert his rights arose from his mother's assurances that at her death the real estate, or its proceeds, would be restored to the heirs, but I incline to the view that the real cause of complainant's inaction was his ignorance of the facts. Complainant undoubtedly had an abiding confidence in his mother, and her statements to him touching the real estate were necessarily not without influence, but his testimony leads me to believe that he has never fully understood the facts as they were, and I somewhat doubt whether the well-known intelligence of his counsel has been sufficient to impart to complainant a full appreciation of the real situation, even at this time. The constructive trust in favor of complainant arises from the fact that Mrs. Markley acquired complainant's real estate in an unlawful manner. My judgment is that complainant remained in ignorance of that essential fact during the entire lifetime of his mother and I doubt whether he yet fully understands it. Under these conditions the statute will not run against him. Mrs. Markley, as above quoted, refers to the partition transaction as a family arrangement. It is clear that complainant had no intelligent part in any family arrangement at that time. After he attained his majority, he understood from his mother that the real estate was to go to the heirs at her death, and that, I am convinced, was the full extent of his information.

It is urged in behalf of the defence that certain releases and a warrant executed by complainant operate to bar his present suit. These instruments are clearly not intended to release any right of complainant in the real estate or its proceeds. The release of Mrs. Markley as guardian can only be operative to dis-

charge any claim of complainant to funds received by her as
guardian. In view of the circumstances under which the parti-
tion sale was made the burden is clearly upon Mrs. Markley
and those now claiming under her trust deed to show that the
accounts on which the guardianship settlement was based em-
bodied the real estate proceeds or values. This might be doubted
as to the $700 received by her as the proceeds of sale of the
Shamong tract, if it were not for the fact that she has, in her
trust deed, explicitly characterized this $700 as "converted real
estate."

The trust deed against which complainant now seeks relief
was executed by Mrs. Markley in 1903. At that time the sev-
eral heirs made demand upon her to put all of her property in
trust for their benefit at her decease. She refused to comply
with that demand, but determined to accede to it so far as the
real estate was concerned. At that time she had sold the man-
sion-house property for $22,500, receiving for it $12,500 in cash
or securities, and a house and lot on Linden street, Camden,
valued at $10,000. In the trust deed she accordingly set apart
the Linden street property as valued at $10,000 and certain se-
curities representing in value the $700 proceeds of sale of the
Shamong property and the $12,500 personalty proceeds of the
mansion-house property, making a total in value of $22,900;
these she conveyed to defendant trust company in trust for her
heirs in such manner that the income should be paid to her for
life and at her death the *corpus* was directed to be divided be-
tween her heirs, but complainant's share was to be retained by
the trust company during complainant's life and only the in-
come paid to him, and at his decease his share was directed to be
held by the trust company for the benefit of his children until
they arrived at the age of twenty-one years, and then paid to
them. Complainant now desires the possession of his share and
to that end the bill seeks to set aside the trust so far as it con-
templates the postponement of the immediate enjoyment of his
share. Considerable testimony has been taken to show that
complainant consented to the execution of the trust deed. The
evidence, however, fails to establish that fact. I at first inclined
to the view that complainant's conduct subsequent to the execu-

tion of the trust deed, and especially since the decease of his mother in accepting from the trustee payments of income under the trust and in renting the real estate from the trustee, has amounted to such a recognition of the trust upon his part as would now deny to him the right to repudiate it, but further consideration satisfies me that any apparent acquiescence of complainant is so clearly attributable to ignorance upon his part that it cannot be equitably treated as a bar to the present assertion of his rights.

I will advise a decree pursuant to the prayer of the bill. Suggestion was made at the hearing that the child or children of complainant, who will be affected by the decree, were not properly before the court. If the record discloses this condition complainant may have leave to take such proceedings, before final decree, as will insure full protection to all interests involved.